THE STATE, EX REL. JOHNSTON, APPELLANT, *v.*
CINCINNATI BOARD OF EDUCATION, APPELLEE.

(No. C-780075—Decided April 4, 1979.)

*Messrs. Green, Schravoni, Murphy & Haines* and *Mr. Frederick G. Cloppert,* for appellant.

*Mr. Thomas A. Luebbers,* city solicitor, and *Ms. Patricia W. Morrison,* for appellee.

BLACK, J.  Relator-appellant, Norman Johnston, appeals from the dismissal of his suit in mandamus, granted on the motion of respondent-appellee, Board of Education, for summary judgment.

Appellant petitioned the Court of Common Pleas for an alternative writ of mandamus that would order appellee to take two actions: (1) to issue him a limited one-year contract to teach throughout the 1977-1978 school year, and (2) to pay him his full salary for the 1976-1977 school year. While the

petition does not formally separate the two causes of action, a reasonable construction leads to the conclusion that two distinct forms of relief were requested.

The trial court held that appellee's motion for summary judgment was well taken because (1) with respect to the claim to be reinstated in the 1977-1978 school year, the court found he had been duly notified of his termination, and (2) with respect to the claim for his 1976-1977 salary, he had an adequate remedy at law. Appellant concedes the correctness of the trial court's decision about his reinstatement, but he claims that the court erred in dismissing his claim for his 1976-1977 salary.

He bases this claim on the following portion of R. C. 3319.11, providing for automatic re-employment of a teacher's limited contract under certain circumstances:

"Any teacher employed under a limited contract, and not eligible to be considered for a continuing contract, is, at the expiration of such limited contract, deemed re-employed under the provisions of this section at the same salary plus any increment provided by the salary schedule unless the employing board, acting on the superintendent's recommendation as to whether or not the teacher should be re-employed, gives such teacher written notice of its intention not to re-employ him on or before the thirtieth day of April. Such teacher is presumed to have accepted such employment unless he notifies the board in writing to the contrary on or before the first day of June, and a written contract for the succeeding school year shall be executed accordingly. The failure of the parties to execute a written contract shall not void the automatic re-employment of such teacher."

We derive the factual basis for our judgment from the pleadings since the record contains no other documents cognizable under Civil Rule 56(C) that are pertinent to the claimed error.

Holding a provisional certificate in trade and industrial education, appellant was offered and accepted a one-year limited contract to teach welding at the Stowe Adult Center for the school year 1975-1976. He was paid weekly at an hourly rate. The "additional comments" in this contract read as follows: "Personal leave—16 hours; no annual leave; 100% hospitalization; 100% life insurance—employment is con-

tingent upon continued federal funding." It appears that this contract was fully performed by both parties during the 1975-1976 school year.

Appellant was not notified by the Board of Education prior to April 30, 1976, that it would not re-employ him for the 1976-1977 school year. Appellant took no action prior to June 1, 1976, with respect to his re-employment.

On August 26, 1976, the Board offered appellant a contract for the 1976-1977 school year, which contained the following comments: "N.B.: Because of lack of funding this position will be eliminated as of 9-30-76; 8 hours per day; no personal leave; no annual leave; no hospitalization; no life insurance." On September 9, 1976, appellant accepted this offer by duly completing and signing the contract form. It appears that he worked and was duly paid until the end of September 1976. His claim is that he should have been paid for the rest of that school year.

While the terminology of appellant's assignment of error might be deemed somewhat ambiguous, his fundamental claim is that the dismissal of his case was erroneous. We do not agree with the reason stated by the trial judge for the dismissal, but we hold that the dismissal was justified on other grounds and that therefore it was not erroneous.

The Ohio Supreme Court held in *Monaghan* v. *Richley* (1972), 32 Ohio St. 2d 190, that a writ of mandamus can issue for the recovery of compensation lost by a public employee as the result of a layoff that was previously determined to have been illegal. In *Monaghan,* the action in mandamus was initiated in the Court of Appeals *after* the employee had been reinstated by the State Personnel Board of Review. The action was for the recovery of compensation only, and the Supreme Court affirmed the issuance of the writ when it found that the recoverable amount could be established with certainty. Thus, it is not necessary that the relator petition for both reinstatement and back pay in order to be entitled to a writ of mandamus. In the instant case, it is of no legal consequence to his maintaining his suit for back pay that appellant's claim for reinstatement was dismissed as unfounded. Accord, *State, ex rel. Dean,* v. *Huddle* (1976), 45 Ohio St. 2d 234.

Furthermore, the availability of a declaratory judgment action does not bar the issuance of a writ of mandamus provid-

ed the relator demonstrates circumstances entitling him to the writ. *State, ex rel. Dollison,* v. *Reddy* (1978), 55 Ohio St. 2d 59. The court may consider the availability of declaratory judgment as one pertinent element in deciding whether or not to issue the writ in its discretion. *State, ex rel. Bennett,* v. *Lime* (1978), 55 Ohio St. 2d 62. Thus, the Supreme Court tells us that the bare existence of declaratory judgment as a remedy is not adequate cause to dismiss a mandamus action when a public employee seeks recovery of compensation under state law.

However, our examination of the record shows that a writ of mandamus could not issue because appellant had waived his rights and thus that the dismissal of his claim for 1976-1977 back pay was without error.

We first consider his status. Contrary to the Board's claim, appellant was a "teacher" within the definition of R. C. 3319.09, and not a "substitute teacher" as defined in R. C. 3319.10. He had a provisional certificate and was entitled only to a limited contract and not to a continuing contract. Cf. *Majoewsky* v. *Bd. of Education* (Hamilton Co. Ct. of Appeals No. C-74527, September 8, 1975), unreported. Under the above-quoted provisions of R. C. 3319.11, he was entitled to automatic re-employment for the 1976-1977 school year because the Board had failed to notify him prior to April 30, 1976, of its intention not to re-employ him, and because he had done nothing to disaffirm such re-employment. He was presumed to have accepted his teaching position for the 1976-1977 school year.

However, he waived his right to automatic re-employment by accepting the one-month teaching contract in September 1976. That contract stated clearly and unequivocally that it was for one month only, and that the position was to be eliminated on September 30, 1976, by reason of lack of funding. The contract also stated that in contrast to the fringe benefits under the preceding year's contract, appellant would have no personal leave, no hospitalization and no life insurance. It was patently a different contract than he was entitled to under R. C. 3319.11. In accepting it, he voluntarily relinquished a known right. Cf. *State, ex rel. Ford,* v. *Bd. of Education* (1943), 141 Ohio St. 124, and *State, ex rel. Brubaker,* v. *Hardy* (1966), 5 Ohio St. 2d 103, in both of which

the teacher's resignation was held to be an express waiver of statutory rights to either a continuing contract or to limited re-employment under R. C. 3319.11. We hold that a resignation is not necessary to establish a waiver and that when appellant accepted the contract clearly limited to one month without protest or reservation, he waived his rights to automatic re-employment for another full year. Thus, he was not entitled to a writ of mandamus ordering payment of the balance of his 1976-1977 wages.

Appellee filed in this court a motion to dismiss the appeal because appellant caused his claim for 1976-1977 wages to become moot by applying for "disability retirement benefits" from the state teachers retirement system and accepting such benefits retroactive to October 1, 1976, the day next following the end of his limited contract. We overrule this motion for two reasons: appellant's application was filed in July or August 1977, after the filing of his petition for writ of mandamus on June 13, 1977, and we do not believe that a claimant who has instituted his suit for back pay must be forced to await the outcome of what may be protracted litigation before he can receive fringe benefits from his prior employment; also, if contrary to our holding, appellant were entitled to his 1976-1977 wages, his receipt of "disability retirement benefits" might be no more than a set-off to his claim.

Appellee also argued that appellant was estopped by his acceptance of the one-month contract or by his receipt of disability retirement benefits, or both. We find no merit in this claim of estoppel because the circumstances amount to a waiver, not an estoppel. For the defense of estoppel to be present, appellant's words or conduct must have induced the Board to have altered its position in some way, a circumstance not demonstrated by the record before us.

We find the single assignment of error has no merit. We affirm the judgment below.

*Judgment affirmed.*

BETTMAN, P. J., and CASTLE, J., concur.